## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**TERRY GLENN JOHNSON**                    **CASE NO.  3:25-CV-00197**

**VERSUS**                                         **JUDGE TERRY A. DOUGHTY**

**WALMART INC**                                   **MAGISTRATE JUDGE PEREZ-MONTES**

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 38] filed by Defendant, Walmart Inc. ("Walmart"). *Pro se* Plaintiff, Terry Glenn Johnson ("Johnson") filed an Opposition to Walmart's Motion [Doc. No. 38], and Walmart filed a Reply [Doc. No. 45].

For the reasons set forth below, the Motion is **GRANTED**.

## I.    FACTS AND BACKGROUND

### A.    Johnson's Employment History and Walmart's Structure and Policies

In 2004, Johnson began working at Walmart.[1] After a brief period away from Walmart, Johnson returned in 2009 and spent fourteen (14) years at Store I49 in Jonesboro, Louisiana, serving a variety of roles.[2] In 2022, Walmart promoted Johnson to a Coach position at Store 23, located in Ruston, Louisiana.[3] As Walmart contends, the Coach position is comparable to an assistant manager role.[4] There were eight

---

[1] [Doc. No. 38-9].
[2] [Id.].
[3] [Id.]. When referring to this store's physical location, as opposed to the named Defendant, the Court will use "Store 23."
[4] [Doc. No. 38-1, p. 6].

other coaches at Store 23.[5] Next in the chain of command is the Store Lead, Preston Coleman ("Coleman"), who was over all Coaches at Store 23.[6] The highest position of this chain of command is the Store Manager.[7] Laquisha Downs ("Downs") was the Store Manager during Johnson's tenure.[8] Not physically present at the stores are individuals Walmart refers to as "Market People," who function similarly to a human resources department.[9] Micheal Carlton ("Carlton") was the Market People Lead and other team members consisted of Faith Smith ("Smith") (Market Coordinator), Jimmy Williams ("Williams") (Asset Protection Manager), and Mark Hankins ("Hankins") (top position of Market Manager).[10]

Walmart's policy prohibits discrimination and retaliation.[11] There are two avenues through which a Walmart employee may address problems arising from workplace issues.[12] The "Open Door" policy is a Walmart procedure that permits any associate to raise workplace concerns with their supervisors, the Market Team, or higher levels of management in the chain of command.[13] The issues may be addressed locally, by the Market Team, or by a separate department.[14] The second avenue is making an ethics complaint.[15] Generally, such complaints revolve around Walmart's code of ethics and may involve issues like harassment, discrimination, or allegations

---

[5] [Doc. No. 38-2, p. 1].
[6] [Id.].
[7] [Id.].
[8] [Id.].
[9] [Id.].
[10] [Id.].
[11] [Doc. No. 38-5].
[12] [Doc. No. 38-2, ¶ 7].
[13] [Id.].
[14] [Id.].
[15] [Doc. No. 38-7, ¶ 3].

of retaliation related to a protected conduct.[16] The two ethics investigators pertinent to this case are Alex Wei ("Wei"), Senior Manager in ethics, and Bejamin Wynn ("Wynn"), ethics investigator.[17]  Wei and Wynn are not local to Store 23.[18] Wynn and Wei state in their declarations that once an ethics complaint is submitted, the ethics department first screens it to confirm it falls within the department's scope.[19] The complaint then undergoes an investigation and reporting process by Wynn before being reviewed by Wei.[20]

### B.    Johnson's Alleged Work Violations

In October 2023, Johnson emailed the Market Team concerning disciplinary action imposed by Coleman and Downs for leaving a garden center fixture in an incorrect location, failing to complete freight as directed, and mishandling a charitable donation.[21] Johnson contested the disciplinary action, but the Market Team initially upheld it.[22] Johnson then filed an appeal, and the Market Team ultimately decided to rescind the disciplinary action.[23] Shortly after the disciplinary action was rescinded, Johnson filed multiple complaints with the ethics department and pursuant to the Open Door policy against Downs, alleging that she permitted profanity in the group text, referred to him as a "squirrel," disclosed confidential information about his potential transfer to Jonesboro, and reduced his hours in his

---

[16] [Id.].
[17] [Id.]; [Doc. No. 38-8].
[18] [Id.].
[19] [Id.].
[20] [Id.].
[21] [Doc. No. 38-2, p. 38]; [Doc. No. 38-12, p. 2].
[22] [Doc. No. 38-2, p. 2].
[23] [Id.].

department.[24] During his deposition, and when asked about such allegations, Johnson stated that Downs never used profanity herself, failed to recall when Downs called him a "squirrel," and stated that Downs did not create the department schedule.[25] Johnson also claimed that Downs altered certain business records pertaining to him.[26] In 2024, Walmart's ethics department launched an investigation into Johnson's complaint concerning the allegation that Downs altered business records.[27] Downs and all store personnel were excluded from participating in the investigation, except to provide interviews regarding the allegations.[28]

Simultaneous to Downs' pending investigation, employees and Associates reported to Downs that Johnson and a Team Lead, Micheal Jones ("Jones"), were making inappropriate racial comments at work.[29] Downs reported the remarks to the ethics department.[30] Wynn handled all the initial reports as investigator and prepared a report.[31] Wei then provided another level of review of Wynn's findings.[32] As for the complaint against Downs, Downs had committed a typographical error as to the business record allegation.[33] With respect to the complaint against Jones, the report concluded that a single employee alleged a specific race-based remark.[34] The employee confirmed that the statement was not observed by any other individuals,

[24] [Doc. No. 38-3, pp. 308–11].
[25] [Id.].
[26] [Doc. No. 38-22].
[27] [Doc. No. 38-2, p. 3].
[28] [Doc. No. 38-7, p. 2].
[29] [Id.].
[30] [Doc. No. 38-11, ¶ 6].
[31] [Doc. No. 38-8, ¶ 8].
[32] [Doc. No. 38-7, ¶ 9].
[33] [Doc. No. 38-16, p. 3].
[34] [Doc. No. 38-16, pp. 4–6].

and Jones denied the accusation.[35]  Wei did not substantiate the allegations against Jones or Downs.[36]

However, as found in Johnson's report, Jacqueline Stevenson ("Stevenson"), a Team Lead, stated that Johnson often "spoke with an unprofessional and argumentative tone and indicated he planned to get Downs and other managers 'in trouble' for favoring white managers because Downs' wife was white."[37] Moreover, Stevenson stated "Johnson indicated he wanted to remove Downs and White Associates from their positions so the store would be 'more Black.'"[38] Yessenia Pesnell ("Pesnell'), General Merchandise Coach, allegedly "became upset one day because Johnson called her the 'opps' and said she had 'White privilege.'"[39] Pesnell stated that Johnson "caused the work environment to be 'very tense.'"[40] Wei substantiated the violations by Johnson.[41]

Wei reached out to Hankins to recommend discipline for Johnson.[42]  Initially, Wei declared that he recommended a "red level discipline, which is Walmart's highest disciplinary level short of discharge" but that "termination would also be an appropriate level of discipline."[43] At that time, Wei testified that he was unaware of an additional violation by Johnson made on or about April 25, 2024.[44] Wei further

---

[35] [Id.].
[36] [Doc. No. 38-7, ¶ 9].
[37] [Doc. No. 38-16, p. 4].
[38] [Id.].
[39] [Id.].
[40] [Id. at p. 5].
[41] [Doc. No. 38-7, ¶ 9].
[42] [Id. at ¶ 10].
[43] [Id.].
[44] [Id.].

testified that Johnson's gender, sexual orientation, and prior complaints played no role in the decision to terminate him.[45]

On or about April 25, 2024, during the course of the investigation, Johnson and his wife went shopping at the Jonesboro Walmart.[46] An ice maker appeared to be misplaced and incorrectly priced at $3.97, while its correct price was $58.[47] Johnson stated that he went to notify a member of management of the pricing error; however, while he was doing so, his wife obtained a price override in the system and purchased the ice maker for $3.97.[48] Walmart policy prohibits employees from taking advantage of readily identifiable pricing errors and requires them to notify management when such mistakes are discovered.[49] Williams' declaration stated that "the fact that his wife physically made the purchase did not excuse Johnson's conduct."[50]

Johnson was terminated by Hankins and Wei sometime in May of 2024.[51] Following his discharge, Walmart replaced Johnson with a male Associate.[52] Johnson appealed his termination, but the decision was upheld.[53]

On February 14, 2025, Johnson filed suit against Walmart alleging a multitude of claims which include allegations of gender and sexual orientation discrimination, retaliation, disparate treatment, Louisiana Whistleblower, hostile work

---

[45] [Id. at ¶ 11].
[46] [Doc. No. 38-3, p. 51].
[47] [Doc. No. 38-17].
[48] [Doc. No. 38-3, pp. 52–56].
[49] [Doc. No. 38-18].
[50] [Doc. No. 38-4, ¶¶ 1, 5].
[51] [Doc. No. 38-15, ¶ 5].
[52] [Doc. No. 38-2, ¶ 14].
[53] [Doc. No. 38-19, p. 3].

environment, and defamation.[54] On December 5, 2025, Walmart filed the present Motion, requesting that this Court dismiss all of Johnson's claims.[55] Johnson opposed the Motion.[56]

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

---

[54] [Doc. No. 1].
[55] [Doc. No. 38-1].
[56] [Doc. No. 44].

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B.    *Pro Se* Leniency

The pleadings of *pro se* litigants are held to a more lenient standard than those of attorneys and are construed liberally to prevent a loss of rights that might result from inartful expression. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021) (citing *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006)). However, *pro se* plaintiffs must plead

factual allegations that rise above a speculative level, and courts should not create causes of action where none exist. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also*, *Taylor*, 296 F.3d at 378; *Cledera*, 834 F. App'x at 972. In any event, the court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

### C.    Hostile Work Environment

Walmart asserts that Johnson's hostile work environment claim fails because Johnson cannot establish the third and fourth elements of a hostile work environment claim – namely that he belongs to a protected class and that the harassment affected a term, condition, or privilege of employment.[57] Johnson contends that he "presents evidence of sustained disparate scrutiny, selective discipline, and tolerance of false allegations, which a reasonable jury could find created an abusive working environment when viewed cumulatively."[58]

To survive summary judgment on a hostile work environment claim, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action." *Friend v. McAdams*, 861 F. App'x 825, 830 (5th Cir. 2021).

---

[57] [Doc. No. 38-1, p. 14].
[58] [Doc. No. 44, p. 5].

Johnson claims that Downs harassed him based upon his sexual orientation and gender.[59] Johnson stated in his deposition that Downs "would just make the job harder" but could not recall anything she said to him based upon his sexual orientation.[60] Further, Johnson alleges that although Downs never made statements explicitly based on his gender, he believed that his sexual orientation—specifically, that he was heterosexual—resulted in his placement at the bottom of Downs' hierarchy.[61] In essence, he seemingly alleges that she afforded more favorable treatment to LGBTQ Associates than to him.

The alleged behavior does not rise to the level of a Title VII violation. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West v. City of Houston, Texas*, 960 F.3d 736, 741–42 (5th Cir. 2020). "In determining whether an employee's work environment was objectively offensive, we consider the totality of the circumstances, including '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with the employee's work performance.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020). The standard is not easy to meet and these "factors are sufficiently demanding to ensure that Title VII does not become a general civility code." *Friend*, 861 F. App'x at 831; *see also West*, 960 F.3d at 742. "[N]ot all

---

[59] [Doc. No. 38-3, p. 17–18].
[60] [Id. at p. 21].
[61] [Doc. No. 38-3, p. 30].

harassment, including 'simple teasing, offhand comments, and isolated incidents (unless extremely serious),'" requires action. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009).

To the extent Johnson alleges a claim based on his gender, the record contains no evidence supporting such a claim. Johnson testified in his deposition that he once overheard a rumor—attributed to an unidentified individual—that Downs harbored animosity toward him due to a prior problematic relationship with a man.[62] This claim, supported by, at best, vague evidence cannot defeat Walmart's Motion. In any event, Johnson primarily alleges that any harassment was based on his sexual orientation. However, the limited conduct Johnson describes—such as every now and then showing favoritism to LGBTQ Associates—does not rise to "permeated with discriminatory intimidation, ridicule, and insult." *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019). Moreover, Johnson's inability to recall specific incidents demonstrates that the alleged conduct lacked the pervasiveness and severity necessary to preclude summary judgment. Accordingly, Walmart's Motion on this issue is **GRANTED**.

### D.    Other Title VII Claims

Title VII prohibits employers from discriminating against employees on a number of grounds. 42 U.S.C. § 2000. To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence

---

[62] [Id. at p. 28].

of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis.

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer can show a legitimate, non-discriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either the proffered reason was a pretext for discrimination or that the plaintiff's protected status was another motivating factor for the decision. *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300–01 (5th Cir. 2023). To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's decision. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

### 1.    Retaliation

Walmart asserts that Johnson cannot satisfy his *prima facie* case in two respects—adverse employment action and causation.[63] Johnson opposes the Motion but offers no competent argument or supporting evidence in his Opposition. And while the Court does not have a duty to "sift through the record" in support of the nonmovants opposition, it does have a duty of leniency for *pro se* filers. *See Forsyth*, 19 F.3d at 1533; *Taylor*, 296 F.3d at 378. Accordingly, the Court looks to Johnson's pending motion for summary judgment for clarification of his position.[64]

---

[63] [Doc. No. 38-1, p. 22].
[64] [Doc. No. 42].

Throughout the record, Johnson offers no direct evidence that he was retaliated against because of his complaints. However, the inquiry does not end there. As stated above, if Johnson cannot succeed on his burden of proof with direct evidence of discriminatory motive, he can still rely on indirect evidence. *McDonnell Douglas*, 411 U.S. at 802.

A plaintiff must show that he (1) engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014). If the plaintiff cannot support all three elements of a *prima facie* case of retaliation, then summary judgment for the defendant is appropriate. *Stewart v. Mississippi Transp. Comm'n.*, 586 F.3d 321, 331 (5th Cir. 2009).

In his Complaint, Johnson identifies three potential adverse actions: (1) his termination; (2) his 2023 evaluation; and (3) the September 2023 discipline or possibly the December 2023 feedback given by Downs.[65] The Court does not consider the September 2023 discipline (which was ultimately rescinded), or the feedback given in December 2023 as adverse employment actions. "[U]nfavorable feedback or performance reviews without an additional showing of loss to [the] plaintiff's compensation, duties, or benefits" is not an adverse employment action. *Butler v. Exxon Mobil Corp.*, 838 F.Supp.2d 473, 491 (M.D. La. 2012) (citing *Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism, oral threats, and abusive remarks are

---

[65] [Doc. No. 1, pp. 6–7].

not adverse employment actions)). And, in any event, Johnson's summary judgment motion mainly focuses on termination as the adverse employment action by specifically arguing an alleged causal connection between certain complaints beginning in March 2024 to his late May 2024 termination.[66] Accordingly, the Court begins the adverse employment action (termination) analysis there.

### a.    Termination

While there are other ways to establish causation, Johnson essentially argues that causation is inherently established due to the temporal proximity of his complaints and termination.[67] In some cases, causation may be inferred from a close temporal proximity between a protected activity and an adverse employment action. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). But, "cases that accept mere temporal proximity ... as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, Johnson was terminated sometime around mid to late May of 2024. Johnson's first complaint was lodged in October of 2023 and the complaints continued until April of 2024, one month before his termination. Thus, the Court finds that Johnson has satisfied the causation element of his *prima facie* case due to temporal proximity. *See Cobb v. Singing River Health Sys.*, 503 F. App'x 290, 293 (5th Cir. 2012) (holding that termination approximately one month after the plaintiff engaged in a protected activity established temporal proximity).

---

[66] [Doc. No. 42-1, pp. 10–11].
[67] [Id. at pp. 9–11].

Walmart must now provide a legitimate, nondiscriminatory reason for Johnson's termination. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 n.44 (5th Cir. 2020). They do. Specifically, Walmart points to Johnson's consistently low evaluations and the finding's report that Johnson made improper, racially divisive statements.  In *Vaughn v. Woodforest Bank*, the Fifth Circuit held that an employee's termination based upon "inappropriate comments in the presence of employees and customers that created a perception of racial discrimination and uncomfortable environment due to lack of confidentiality" was sufficient to meet the employer's legitimate, nondiscriminatory reason for termination. 665 F.3d 632, 636–37 (5th Cir. 2011). Similar to *Vaughn*, Johnson was overheard making statements that the store needed to be "more Black," referred to individuals of races different from his own as "opps," and told an employee that she had "white privilege."[68]

Since Walmart has met its burden, Johnson must overcome it. To establish pretext, Johnson must show that Walmart's "proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221 (5th Cir. 2001)). And the evidence supporting pretext must be "substantial." *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 527 (5th Cir. 2022) (quoting *Delaval v. PTech Drilling Tubulars, L.L.C*, 824 F.3d 476, 480 (5th Cir. 2016)). Johnson first attempts to establish pretext by using timing.[69] But timing, on its own, is not enough to show pretext. *Strong*, 482 F.3d at 807.

---

[68] [Doc. No. 38-16, pp. 4–5].
[69] [Doc. No. 42-1, p. 12].

Johnson further attempts to demonstrate pretext by using comparator evidence. Specifically, Johnson argues that the "identical allegations against [Team Lead] Micheal Jones" were unsubstantiated despite using the same witnesses.[70] As Walmart shows, the evidence regarding the investigation of Jones and Johnson yielded different results. Although allegations were raised that Jones made improper or race-related statements, only one employee identified a specific race-based remark during the interviews. That witness acknowledged the statement was not observed by any other employee, and Jones denied the allegation. By contrast, multiple employees reported repeated, specific racially improper statements by Johnson, including not only complaints to management but also multiple first-hand, corroborated accounts that Johnson made such statements.

Because Johson has failed to present sufficiently similar comparator evidence, the Court finds that Johnson has failed to show pretext.

## 2.    Disparate Treatment/Discrimination Claims

Walmart asserts that Johnson has no direct evidence of disparate treatment and, in any event, cannot establish a *prima facie* case.[71] It is unclear precisely what conduct Johnson asserts as disparate treatment; however, when viewed in light of his other arguments, he appears to allege that he was treated differently because of his sexual orientation.[72] He also states that because Walmart substantiated allegations

---

[70] [Doc. No. 44, p. 5].
[71] [Doc. No. 38-1, p. 18].
[72] [Doc. No. 1, p. 4].

against him but "unsubstantiated identical allegations against Micheal Jones using the same witnesses," the "comparator evidence alone defeats summary judgment."[73]

Johnson offers no direct evidence that he was discriminated against or subject to disparate treatment based on his gender or sexual orientation. However, the inquiry does not end there. As stated above, if Johnson cannot succeed on his burden of proof with direct evidence of discriminatory motive, he can still rely on indirect evidence. *McDonnell Douglas*, 411 U.S. at 802.

Under *McDonnell Douglas*, the plaintiff carries the burden to prove that (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside his class. *Id.*; *see also Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Johnson cannot establish his *prima facie* case on the fourth element—that he was treated less favorably than other similarly situated employees outside his class. Johnson must show that his employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee*, 574 F.3d at 260.

Although hard to discern, Johnson seemingly makes discrimination/disparate treatment claims based upon the same allegations as laid out in his hostile work environment claim—being treated less favorably than LGBTQ employees. And for the same reasons laid out above, Johnson lacks any competent evidence to show that

---

[73] [Doc. No. 44, p. 6].

certain acts or statements of discrimination or disparate treatment were based in any way upon his sexual orientation or gender. Instead, Johnson relies on his own subjective belief that other employees who were subject to more favorable treatment were LGBTQ. Johnson alleges that Travis Parker, a *suspected* LGBTQ Coach, would use profanity in the professional text and not get in trouble.[74] But Johnson offers no evidence that he used profanity in a professional text and got disciplined for it. Further, Johnson offers no proof, other than his subjective belief, that these similarly situated individuals were, in fact, outside of his protected class. He mentions that certain Associates were not terminated for fighting but doesn't know their sexual orientation.[75] Nor does he offer evidence that he was terminated or, at the least, reprimanded for fighting.  Further, Johnson fails to show how a Coach and an Associate are similarly situated positions. Moreover, for the reasons stated above, Johnson cannot establish disparate treatment based on Jones's unsubstantiated allegations, as Walmart has demonstrated a clear distinction between the two findings. Further, Johnson cannot, and does not, show that Jones was outside of his protected class, or similarly situated.

Accordingly, Johnson fails to satisfy the fourth *prima facie* prong of discrimination or disparate treatment as any claims of such are only supported by his own subjective belief. And subjective belief is not enough. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (rejecting plaintiff's reliance on subjective belief regarding discriminatory intent); *Anderson v. Douglas & Lomason*

---

[74] [Doc. No. 38-3, pp. 20–22].
[75] [Doc. No. 44, p. 6].

*Co.*, 26 F.3d 1277, 1297–98 (5th Cir. 1994) (holding that plaintiffs' mere collective belief was insufficient to prove that race was the true reason for disparate treatment); *Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005) ("subjective belief[s] [are] an insufficient defense to a summary judgment motion."). Thus, Walmart's Motion as to Johnson's discrimination and disparate treatment claims is **GRANTED**.

### E.   Whistleblower Claim

Seemingly, Johnson argues in his Complaint that Walmart violated state anti-discrimination laws.[76] Walmart asserts that the Whistleblower Statue protects claimants for actions not specifically addressed by Title VII.[77] Walmart is correct. Under the Louisiana Whistleblower Statute, an employer may not take reprisal against its employee who directs attention to the employer's violations of law. *See* LA. STAT. ANN. § 23:967 (2025). Section 23:967 clearly provides that, in order to assert a claim under the Louisiana Whistleblower statute, the employee must have advised his employer of a violation of state law prior to his termination. *Id.* at § 967(A)(1) ("An employer shall not take reprisal against an employee who . . . after advising the employer of the violation of law . . . threatens to disclose a workplace act or practice that is in violation of state law."); *see also Hale v. Touro Infirmary*, 886 So. 2d 1210, 1216 (La. Ct. App. 2004) (noting that the plaintiff must establish that she advised her employer of the alleged violation of law and then threatened to disclose the violation, and, as a result of her threat, was fired). Moreover, "[w]hereas the protection against retaliation offered by Title VII is limited to retaliation for acts otherwise protected by

---

[76] [Doc. No. 1, p. 7].
[77] [Doc. No. 38-1, p. 21].

Title VII, the protection extended by Louisiana's Whistleblower Statute, La. R.S. 23: 967, covers reprisal for actions not specifically addressed by Title VII." *Stevenson v. Williamson*, 547 F.Supp.2d 544, 557 (M.D. La. 2008).

First, Johnson alleges a violation of state law that is encompassed by Title VII's anti-discrimination provisions; therefore, his claim fails on this basis alone. Second, even assuming Johnson intended to assert a state law violation, he has provided no evidence that he informed Walmart of any such violation, or that he was disciplined as a result.

Accordingly, to the extent Johnson asserts a Louisiana Whistleblower claim, Walmart's Motion on this issue is **GRANTED**.

## F. Defamation Claim

Walmart contends that Johnson's claim of defamation "fails at the outset" because it "lacks any specific statement or publication, much less by a person with authority to bind Walmart."[78] Johnson asserts that he "identifies specific defamatory statements" and "evidence that Walmart agents allowed those statements to circulate post-termination."[79] Johnson further alleges that Walmart is liable for defamation because Walmart allowed unsubstantiated allegations to be repeated to third parties.[80]

Johnson is mistaken. To properly state a claim for defamation, the complaint must set forth "specific allegations regarding the alleged defamatory

---

[78] [Doc. No. 38-1, p. 26].
[79] [Doc. No. 44, p. 5].
[80] [Id.].

communications." *Roebuck v. Dothan Sec. Inc.,* 515 F. App'x 275, 280 (5th Cir. 2013). Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Sassone v. Elder*, 626 So. 2d 345, 350 (La. 1993). To maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006); *Henry v. Lake Charles Am. Press. L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009). Fault is generally referred to in the jurisprudence as "malice, actual or implied." *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp. 3d 532, 542 (W.D. La. 2017) (quoting *Kennedy*, 935 So. 2d at 674). One must identify the alleged defamatory statement and the speaker. *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007).

Here, the Court concludes that Johnson cannot meet any elements of defamation, but the Court chooses only to discuss the first two. First, Johnson cannot show a particular speaker or statement made that would amount to defamation. As Walmart points out, Johnson testified that defamation was based on "them" "spreading rumors, spreading lies that I've sexually harassed someone, that I racially harassed someone."[81] Yet, when asked whether anyone at Walmart or anybody in management "went out and told anybody why you were fired," Johnson replied, "I wouldn't be privy to that information. No one has told me anything."[82] He further

---

[81] [Doc. No. 38-3, p. 56].
[82] [Id. at pp. 56–58].

testifies that no one at Walmart actually said he was a thief.[83] Moreover, he claims "Rodnesha" "were telling me about it" but that she heard from someone else who she cannot identity and that he would have to go back and review the statement again.[84] And, Johnson fails to identify any statement or speaker in his Opposition. Because one must identify the alleged defamatory statement and the speaker, his claim fails. *Ameen,* 226 F. App'x at 370.

Moreover, Johnson points to no third-party publication. In *Danna v. Ritz-Carlton Hotel Co., LLC*, the plaintiff alleged that "false disciplinary reports, suspension notification, termination notification, and a post-termination conversation with an employer at the Hotel Intercontinental where [the plaintiff] applied for job constituted defamation." 213 So. 3d 26, 34 (La. Ct. App. 2016). The defendant argued that any communication regarding the plaintiff was in the scope of his employment and in the chain of command at the Hotel, thus the plaintiff failed to satisfy element two of the defamation elements. *Id*. The Louisiana Fourth Circuit Court of Appeal agreed, holding that "'[S]tatements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication.'" *Doe v. Grant*, 839 So. 2d 408, 416 (La. Ct. App. 2003) (quoting *Bell v. Rogers*, 698 So.2d 749, 756 (La. Ct. App. 1997)). Even affording Johnson the utmost deference, the only minimal identification he offers is an unspecified statement attributed to an individual identified only as Rodnesha, whose last name is unknown, who purportedly heard an unidentified

---

[83] [Id.].
[84] [Id.].

employee make a remark. At most, the alleged defamatory statements concerning sexual and racial harassment appear solely in Walmart's internal documents, and Johnson fails to demonstrate that any such statements were published to individuals outside Walmart's employment hierarchy.

Accordingly, Walmart's Motion on this claim is **GRANTED**.

To sum, none of Johnson's claims—all claims under Title VII, Louisiana Whistleblower, or Defamation—raise a sufficient dispute of genuine material fact. And because of such, Walmart is entitled, as a matter of law, to summary judgment in its favor on all of such claims. Thus, Johnson's pending motion for summary judgment [Doc. No. 42] must be denied.

## III.      CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Walmart's Motion [Doc. No. 38] is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Walmart's Motion for Summary Judgment as to Johnson's claims under Title VII, Louisiana Whistleblower, and Defamation is **GRANTED**, and all claims are **DISMISSED WITH PREJUDICE**. Accordingly, Johnson's pending Motion for Summary Judgment [Doc. No. 42] is **DENIED AS MOOT**.

MONROE, LOUISIANA, this 2nd day of February 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE